THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* CARMINE LICENZIATA, Respondent.

Second Department, September 29, 1930.

*Henry J. Walsh, Assistant District Attorney [George E. Brower, District Attorney, with him on the brief], for the appellant.*

*Edward J. Reilly, for the respondent.*

RICH, J.   The defendant was convicted of the crime of manslaughter in the first degree on November 26, 1920, and sentenced to a term of eighteen years and six months in Sing Sing Prison. Defendant appealed to this court from the judgment of conviction, and a certificate of reasonable doubt was granted in which bail was fixed at $50,000.   Joseph C. Piscopo deposited, in behalf of defendant, $50,000 in cash bail in the office of the clerk of Kings county in lieu of an undertaking in that amount.   The money was paid to the chamberlain of the city of New York on December 27, 1920.   The judgment of conviction was affirmed by this court on *December 23, 1921 (People v. Licenziata,* 199 App. Div. 106).   The surety, Piscopo, failed to produce the defendant and the bail was declared forfeited and the said sum was deposited with the chamberlain of the city of New York as a forfeited recognizance in the matter of Carmine Licenziata as principal, and Joseph C. Piscopo as surety, which amount was duly credited to the account known as " Forfeited recognizances, New York County."   It was a bookkeeping error to credit the funds to New York county instead of Kings county.   It seems that the deposit was used for the reduction of taxation for the year 1922; it has lost its identity, and has been intermingled with the general funds of the city.

Defendant escaped.   He was later apprehended and committed to Sing Sing Prison on November 2, 1929.   Thereafter, and on *April 21, 1930,* he moved to vacate the forfeiture of the bail and for an order directing that the cash bail, deposited in his behalf as aforesaid, be restored to him.   The defendant claims that the cash bail was deposited by Piscopo and himself and that the People lost none of their rights by reason of the *delay of eight years* in the defendant's appearance for sentence.   It is claimed that Piscopo merely deposited the money for the defendant and that it was really defendant's property, and he asks that it be returned.   He pleads in extenuation that, when he attempted to deliver himself to the authorities, he was threatened with bodily harm and death by enemies in this country and that his wife and six children, who reside in Italy, are in want and will suffer undue hardship unless the bail is returned to him.   He also pleads in extenuation that he was improperly convicted.   We cannot agree to this contention, and, any way, that question is now academic.   The Special Term granted the motion on the ground that the case was one of extreme

hardship, has vacated the forfeiture of the bail and directed the comptroller to return to the defendant the sum of $50,000 without interest. The People appeal.

The application in the case at bar is addressed to the sound discretion of the court. (Code Crim. Proc. §§ 596, 597, 598.) Such discretion, it has been said, should not be exercised except in cases of extreme hardship such as will cause destitution to a family, deprive children of support and education, or creditors of their just debts. (*People* v. *Spear*, 1 N. Y. Crim. 538; *People* v. *Heit*, 152 App. Div. 179.) The circumstances disclosed in the case at bar warrant the denial of the application if made by a surety, for, as the court said in *People* v. *Rich* (36 App. Div. 60): " To take a person accused of crime from the custody of the People, give him an opportunity to escape, and after some years of freedom to die in a foreign country, and then, after having paid the amount of the bond, petition for its return, is not, in my opinion, a proper case for the exercise of discretion." And in *People* v. *Schwarze* (168 App. Div. 124): " In passing upon such applications, the court should remember that there is a principle involved beyond that of clemency to the bondsman. Justice may be defeated by the escape of the principal, and if it is clearly understood that the bondsman will be held rigidly accountable for the escape, the administration of the criminal law will be promoted." These principles have been reiterated in *People* v. *Cohen* (229 App. Div. 515). The question presented by this appeal is whether, the money having been deposited by a surety and now claimed by the defendant as his property, a case is presented warranting the exercise of the court's discretion. Apart from the possibility, as the district attorney has pointed out, that the application may have been made in the name of the defendant as a subterfuge, the fact that the certificate of deposit was issued to the surety, it seems to me, vests the title to the money in him. It was held in *People ex rel. Gilbert* v. *Laidlaw* (102 N. Y. 588) that the title to the money vested in the defendant in the action because the statute (Code Crim. Proc. § 586) at that time permitted a deposit of money only by the defendant. The statute has since been amended to permit a person other than the defendant to make the deposit and authorizes its return to this person with the defendant's consent. (See Laws of 1913, chap. 133; Laws of 1918, chap. 293.) In *Cohen* v. *Bruere* (96 Misc. 609; affd., 179 App. Div. 884) Judge GOFF, referring to this amendment, said that it did not detract from the ownership of the depositor nor did it confer ownership on the defendant; that if the defendant had no title as against the depositor, his consent would not confer title, and his refusal to do so could not

impair the right of the depositor to have the money returned to him. The defendant does not claim ownership of *all* of the money, and in fact it is said to be his intention to return part of it to his relatives from whom he claims that he borrowed it, and to apply the balance to the support of his wife and children.

While the object of these applications is to mitigate cases of extreme hardship, it must not be overlooked that there is also involved the necessity of holding bondsmen to strict accountability, so that the criminal law may not be brought into disrepute. Tested by these principles, and even assuming that part of the bail money is the defendant's property, and that the facts in the case at bar disclose a possibility of some hardship to defendant's wife and children residing in Italy, we are of the opinion that this does not outweigh the public necessity of providing deterrents, as effective as possible, to escapes of persons convicted of crime.

It follows that the order was improperly made and it should be reversed upon the law and the facts, without costs, and the motion denied, without costs.

LAZANSKY, P. J., YOUNG, SCUDDER and TOMPKINS, JJ., concur.

Order vacating and setting aside forfeiture of sum deposited as bail reversed upon the law and the facts, without costs, and motion denied, without costs.